## ISRAEL HOUGHTON *versus* HUTCHINS HAPGOOD, Executor.

A testator, whose personal estate was not sufficient for the payment of his debts, " gives the residue of his estate, after paying his debts, to his daughters ; always providing that if this residue shall exceed 1000 dollars in value to each daughter, then the overplus shall be divided among all his children, after first taking from such overplus enough to clear from a mortgage his homestead farm for his son, if not otherwise done." *Held,* that the gift to the daughters was a devise of real estate, and not a money legacy.

The residue above mentioned, consisting of wild lands, was sold by the executor and purchased by himself, before the death of one of the daughters, who was a feme covert at the time of the sale, and such proceedings were had in courts of probate, that after her death the sale was adjudged voidable. It was *held,* that her declarations in conversation, in concurrence with similar declarations of her husband, that she intended to affirm the sale and take her share of the proceeds in money, were not sufficient evidence of her election.

The heirs of such daughter having elected to affirm such sale, and the executor being ordered to distribute the proceeds with interest from the time of the sale, it was decreed that the husband of such daughter, as tenant by the curtesy, should receive the interest which had already accrued on her share of the proceeds, together with the present value of the interest which would accrue during his life, to be ascertained by a life-annuity table.

·THIS was an appeal from a decree of the judge of probate, made on the final settlement of the accounts of Hutchins Hapgood, executor of the last will of Jonathan Grout, and ordering the distribution of $ 15,676·38, the balance of the estate of the deceased in the hands of the executor.

The reason of appeal is, because the share of the testator's estate, to which the wife of the appellant was entitled by the will, is ordered by the judge to be paid to her children, whereas the appellant is legally entitled to the same.

The parties stated the following facts.

The testator made his will on December 29, 1804, and died on September 9, 1807, and his will was proved on December 1, 1807. The will contained the following clause : — " The rest and residue of my estate I give, after paying my debts, to my daughters Sarah Brooks, Betsey Hapgood, Lydia Houghton, Dolly Hapgood and Sukey Grout, always providing that if this residue shall exceed one thousand dollars in value to each daughter, then the overplus shall be divided among all my children, after first taking from such overplus enough to clear the homestead farm for John, if not otherwise done."

Lydia Houghton was at the time of the making of the will, and until her death on March 25, 1827, the wife of the appellant. She left two children, who are now living, namely, Jonathan G. Shaw by a former husband, and George A. Houghton, by the appellant.

The appellee represented the estate of the testator as insolvent, both in this State, and in Vermont, where he took out letters of administration. In 1815, he obtained, from the proper courts in both States, license to sell real estate of the testator, and he sold all the real estate, causing a great part of it to be bid off by others and taking conveyances of the same to himself, from the purchasers.

The estate was not in fact insolvent, and on a final settlement of the same, as appears by a decree of this Court, in 1830, there was then in the hands of the appellee the sum of $ 15,676·38, which was the proceeds of the sales of the real estate, with interest thereon from June 1, 1815, when the sales were made.

The appellant is one of those supposed to be interested in the estate of the testator, who have been engaged in prosecuting the proceedings against the appellee, which arose out of his administration of the estate, and resulted in the decree last mentioned.

To prove an assent by Lydia Houghton, to the sales made by the appellee, and an election to take the proceeds thereof instead of the land sold, the appellant filed the depositions of Polly G. Brooks and George A. Houghton, in which they depose that they heard Mrs. Houghton say that

Houghton
v.
Hapgood.

she meant to have the money and not the land; and that they had heard the appellant express the like intention.

The decree appealed from, and other proceedings in the settlement of the testator's estate, were made a part of the case.

It was agreed, that if the decree was erroneous, this Court might reverse it and enter up a correct decree; otherwise the appeal was to be dismissed.

*Oct. 6th.*     *J. Davis* and *Washburn*, for the appellant, argued that the bequest to Mrs. Houghton was not a devise, but a money legacy, at least to the amount of 1000 dollars, which vested in her husband. It was a direction to the executor to sell the land and pay 1000 dollars to each daughter and clear the homestead.

But if the bequest was a devise, the land has been converted into personal property and is to be distributed accordingly. Jeremy on Eq. Jurisd. 532, 533. The sales were voidable only; *Jennison* v. *Hapgood*, 10 Pick. 107, 111; and the burden is upon the appellee to show that Mrs. Houghton elected to consider them as void. He has not shown this; but on the contrary, the appellant has proved, as well by the long acquiescence as by the express declarations of Mrs. Houghton, and by the decrees of the courts here and in Vermont, an affirmation of the sales. Jeremy on Eq. Jurisd. 142; *Randall* v. *Errington*, 10 Ves. 427; *Parkes* v. *White*, 11 Ves. 226. The proceeds, therefore, should be decreed to her personal representative, the appellant. *St.* 1805, *c.* 90, § 2.

If the bequest is of real estate, the appellant is entitled as tenant by the curtesy, to all the past interest and to the future interest during his life.

*Newton* and *Brooks* for the appellee, insisted that Mrs. Houghton took a devise of real estate; and that she could not alienate it, except in one of three modes, namely, 1. By deed, her husband joining in the conveyance; or 2. By being a party to the record and being examined by the court apart from her husband; or 3. By estoppel to claim the land, in case she had received the money for which it was sold. She was never a party to the record, and the evi-

dence in the case is wholly insufficient to prove that she
made an election in any of these modes.  1 Bl. Com. 444 ;
Fowler v. Shearer, 7 Mass. R. 14 ; Butler and Baker's case,
3 Co. 26 a ; Morse v. Royal, 12 Ves. 372.

The husband cannot be regarded as tenant by the curtesy,
the distributive share which he claims being the proceeds of
wild lands.

WILDE J. delivered the opinion of the Court.  The ques-
tions arising upon this appeal depend upon the construction
of a clause in the last will and testament of the late Jonathan
Grout, which is deemed doubtful, and upon the proceedings
of the executor in administering the estate, which for many
years past have proved such a never-failing fountain of con-
troversy in the courts of this commonwealth, and in those
of an adjoining State, where a considerable portion of the
estate of the testator was situate.

Upon the facts in the case the counsel for the appellant
have endeavoured to maintain two positions : — 1.  That the
residuary clause, at least to the extent of $1000, is to be
construed as a pecuniary legacy, and so vested in the appel-
lant.  2.  If it is not so construed, but is considered as a
residuary devise of real estate, then that the land devised was
converted into money, with the consent of Lydia Houghton,
and that it thereupon vested in her husband, the appellant.

Neither of these positions can, we think, be maintained.

The testator's property consisted principally of real estate,
the personal estate being insufficient to pay his debts.  The
residuary clause, therefore, is in express language a dispo-
sition and devise of real estate, and there is nothing to indi-
cate an intention of giving a pecuniary legacy.

It has been said, that if the lands had not been sold, it
would be difficult, if not impossible, to execute the will,
construing the residuary clause as a devise of lands ; but we
can perceive no impossibility, nor indeed the slightest diffi-
culty in making a distribution of the property according to
the terms of the will.  The lands might be appraised, and
if the appraised value should not exceed the sum of $5000,
or $1000 to each daughter, then the whole would vest in
them in equal shares.  If the value should exceed that amount,

Houghton
v.
Hapgood.

Oct. 9th.

then so much of the land as would be of that value might be set off to them, leaving the residue to be divided among all the children.

As to the second question, whether Lydia Houghton assented to the sales made by the executor. The evidence appears to us not satisfactory. Courts should be slow to sanction the assent of a wife to the conversion of real estate into money, without convincing proof that she assented understandingly, and with a full knowledge of the legal effect of such a conversion upon her rights and interests, and without any undue influence on the part of her husband. The loose conversations of the wife, such as are proved by the depositions of Polly G. Brooks and George A. Houghton, unsupported as they are by any circumstance to show that she understood the legal effect of such a change, and did not act under the influence of her husband, ought not, we think, to be binding upon her or her heirs. Upon her death, therefore, her share of the real estate descended to her heirs, the sales of the executor being void. But the heirs have since elected to confirm the sales, as they had a right to do, and are, therefore, entitled to an equivalent in their distributive shares of the fund produced by the sales.

They are, however, not entitled to the whole share belonging to Lydia Houghton. The husband, during the life of his wife, was entitled to the profits and income of her real estate ; and he continues entitled to receive the same as tenant by the curtesy. The interest of the money for which the lands sold, consequently, belongs to him, he relinquishing his claim to the lands. We are aware that this may probably exceed the profits or income of the estates sold, and so probably the amount of sales exceed the present value of the estates sold. But to these advantages, if any there be, the parties are respectively entitled. The appellant's distributive share will, upon these principles, be the amount of the past interest, and the present value of his life-right in the future interest or income of his deceased wife's share of the fund arising from the sales.

The expectation of life is to be determined by Dr. Wigglesworth's Table of Mortality, and the value of the life-right

may be ascertained by computation, or by Dr. Bowditch's life-annuity tables.

The decree of the judge of probate is to be reversed, and a new decree entered up in conformity to these principles, and the papers are to be remitted to the probate court for further proceedings.